**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SIERRA CLUB, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 07-0216-WS-M** |
| | ) | |
| **DICK KEMPTHORNE, etc., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the plaintiffs' motion for leave to present testimony and extra-record evidence in support of their motion for preliminary injunction. (Doc. 46). The plaintiffs identify the following as evidence they would like to present: (1) testimony and/or declarations from three experts in population biology and the Alabama beach mouse ("ABM"); and (2) documents believed by the plaintiffs to be part of the agency's records but not included in the administrative record submitted to the Court. (*Id*. at 1-2).[1] The defendants have filed responses, (Docs. 49, 52), and the plaintiffs a reply, (Doc. 60), and the motion is ripe for resolution.

The plaintiffs challenge the action of defendant United States Fish and Wildlife Service ("FWS") in issuing Habitat Conservation Plans ("HCP") and Incidental Take Permits ("ITP") in favor of the private developer defendants. In particular, in Count One of the amended complaint the plaintiffs challenge the Biological Opinion ("BO") issued by FWS as a predicate to the HCPs and ITPs, claiming it does not comport with the

[1]These documents include: (1) 2006 trapping data for the ABM; (2) a March 2004 draft Cumulative Impacts Assessment; (3) documents relating to the Population Viability Analyses ("PVA") for the ABM, and possibly additional documents identified in response to FOIA requests and discovery requests in other actions; and (4) any documents presently withheld from the administrative record on the grounds of privilege that are subsequently released. (Doc. 46 at 1-2, 7-9).

Endangered Species Act ("ESA") and the Administrative Procedures Act ("APA").[2]

The plaintiffs concede that their challenge to the BO is governed by the APA. (Doc. 8 at 17). *See, e.g., Bennett v. Spear*, 520 U.S. 154, 174-75 (1997); *Funds for Animals v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996). Under the APA, "[t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law ...." 5 U.S.C. § 706(2)(A). The plaintiffs challenge the FWS's action as arbitrary and capricious, (Doc. 8 at 17), which they define as requiring the Court to consider "whether the agency acted within the scope of its legal authority, whether it has explained its decision, whether the facts on which it purports to rely have some basis in the record, and whether the agency considered the relevant factors." (Doc. 46 at 3 (internal quotes omitted)). *Cf. Arango v. United States Department of the Treasury*, 115 F.3d 922, 928 (11th Cir. 1997) (under the APA, a court "can set aside an agency's decision only if the agency relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a rational connection between the facts found and the choice made") (internal quotes omitted).

"In applying that standard [of judicial review set forth in the APA], the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "The task of the reviewing court is to apply the appropriate APA standard of review ... to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).

The plaintiffs do not quarrel with these principles, but they argue that there are circumstances under which a reviewing court can look beyond the administrative record,

---

[2]Count Two of the amended complaint alleges that FWS's Final Environmental Impact Statement ("FEIS") violates the National Environmental Policy Act and the APA, but the motion for preliminary injunction addresses only the BO under Count One. (Doc. 8).

and they insist that several of those circumstances are present here. In particular, the plaintiffs argue that they may present evidence not in the administrative record because: (1) the BO fails to address certain relevant factors and treats others only in conclusory fashion; (2) the matters involved are complex and technical; (3) the BO relies upon studies whose authors question FWS's use of their work; (4) the administrative record does not include all documents that FWS had before it; and (5) there is no opportunity for public input on a BO. (Doc. 46 at 2-3, 5-11). The Court examines these bases in turn.

With respect to the first ground, the plaintiffs argue that the BO's allegedly inadequate treatment of various factors allows them to present evidence from their experts because it is questionable "whether the agency 'considered all of the relevant factors and ... explained its decision.'" (Doc. 46 at 5). The plaintiffs' quote is from a Ninth Circuit case indicating that evidence beyond the administrative record may be introduced in this circumstance. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). The Ninth Circuit antecedents of this rule, however, make plain that any evidence admitted under this exception must be "'obtain[ed] *from the agency*, either through affidavits or testimony.'" *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) (emphasis added) (quoting *Camp*, 411 U.S. at 143). As *Animal Defense Council* makes clear, this is a limitation imposed by the Supreme Court itself. The plaintiffs do not seek to introduce evidence from FWS but from their own experts. This exception is thus inapplicable.

With respect to the second ground, the governmental defendants expressly, and the private defendants tacitly, acknowledge the existence of an exception for testimony presented to explain technical terms or complex subject matter. (Doc. 49 at 11; Doc. 52 at 7). However, the Ninth Circuit (on whom the plaintiffs rely for their articulation of the exception) emphasizes that the exception is "narrowly construed and applied." *Lands Council*, 395 F.3d at 1030. The plaintiffs' effort to come within this limited exception falls far short.

The plaintiffs first repeat their complaint that the BO does not address certain relevant factors, viz., inbreeding depression, significance of the PVA models, determination of the population and habitat necessary for survival and recovery, and the effect of predators. (Doc. 46 at 5). Were there some disagreement as to whether these are "relevant factors" within the contemplation of the arbitrary-and-capricious standard of review, the "technical and complex" exception might allow the plaintiffs to present expert testimony to establish the point. The defendants, however, concede that each item on the plaintiffs' list is a relevant factor. (Doc. 49 at 16-20; Doc. 52 at 8 n.8). Any failure of the BO to *address* these factors must be evaluated under the first exception and, as discussed above, that exception requires any additional evidence to come from the agency.

The plaintiffs next argue that the "technical and complex" exception applies whenever there is a challenge to whether the agency utilized a "qualified expert" or reached a decision "reasonable by the standards of the discipline." (Doc. 46 at 5-6). There are at least two fatal flaws with this approach. First, "federal courts apply the 'arbitrary and capricious' standard, as opposed to the 'reasonableness' standard, when reviewing final agency decisions under the Administrative Procedures Act." *City of Oxford v. Federal Aviation Administration*, 428 F.3d 1346, 1352 (11th Cir. 2005). Second, were extrinsic evidence permissible whenever the reasonableness of a decision were challenged, the exception would swallow the rule — a result incompatible with this "narrow" exception.

Finally, the plaintiffs assert without amplification that issues such as population dynamics, population genetics, and habitat needs "require focused outside testimony." (Doc. 46 at 6-7). This assertion is too vague to allow analysis and, in any event, is so open-ended that it, like the plaintiffs' previous argument, would impermissibly engulf the rule if accepted.

With respect to the third ground, the governmental defendants question whether the plaintiffs' experts truly take issue with FWS's use of their studies, (Doc. 49 at 12-13),

but there is a more basic problem with their attempt to go beyond the administrative record in this manner. In the sole case on which they rely, before issuing the challenged decision the agency had already received from the expert the critical declaration that was allowed in evidence on judicial review. *Carlton v. Babbitt*, 26 F. Supp. 2d 102, 111 (D.D.C. 1998). While this document was not in the administrative record (because it had been submitted in another matter), it was within the agency's possession when it rendered its decision. The plaintiffs here do not seek to present a written critique that was possessed by FWS when it issued its BO, and the exception is thus inapplicable.

With respect to the fourth ground, the defendants do not disagree that the plaintiffs are entitled to a complete administrative record, and FWS has agreed to supplement that record to include additional trapping data, the draft Cumulative Impacts Assessment, and the documents identified by FWS in other responses but omitted from the administrative record it originally submitted. (Doc. 49 at 1, 9-11). FWS is **ordered** to amend the administrative record accordingly on or before **May 11, 2007.** Because these documents will become part of the administrative record, it is unnecessary to consider whether the plaintiffs could present them in evidence otherwise.

The only contested documents that FWS has not agreed to add to the administrative record (other than those as to which it has asserted a claim of privilege, which will be tested by separate motion) reflect certain trapping data, which FWS says "were not relied on ... due to the time required to finalize the analysis and the final document." (Doc. 49 at 10 n.5). It is not clear from FWS's statement whether the documents arrived before or after the BO was issued. The point is significant, because the Court's review "is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420 (1971). FWS has not attempted to support the proposition that, of the universe of documents in its files on this matter when it issued the BO, only that subset on which it actually relied constitutes the administrative record. Accordingly, FWS is

**ordered** to file and serve, on or before **May 14, 2007**, a statement as to whether the withheld trapping data were received before the BO was issued. If the trapping data were received before the BO was issued, FWS is **ordered** to amend the administrative record to include the data on or before **May 14, 2007**.

With respect to the fifth ground, the defendants agree that biological opinions are issued without public notice and comment. (Doc. 49 at 26; Doc. 52 at 9). As they point out, however, the plaintiffs provide no authority for the proposition that this circumstance entitles them to go beyond the administrative record. Nor do the plaintiffs offer any support for their insistence that the Supreme Court's jurisprudence limiting the evidence on judicial review to the administrative record is premised on the existence of such public participation. (Doc. 46 at 10). The plaintiffs' argument rings especially hollow in this case, since the FEIS prepared by FWS *was* subject to public notice and comment, and the plaintiffs took advantage of the opportunity to submit comments, including on matters now made the subject of the experts' proposed testimony. (Doc. 49 at 22; Doc. 52 at 10).

So far as the parties' briefing reveals, the Eleventh Circuit has never adopted any of the plaintiffs' five proposed exceptions to the closed-record rule.[3] The Court assumes without deciding that the Eleventh Circuit might adopt the first and second exceptions (since they have been adopted in other courts) but concludes that the plaintiffs' proposed evidence does not fall within the confines of those exceptions. The Court concludes that the Eleventh Circuit would not adopt the third and fifth proposed exceptions, since the plaintiffs have been unable to support either one with authority or cogent analysis. Finally, the Court concludes that the plaintiffs are entitled to a full administrative record

---

[3]The Eleventh Circuit has cited several of these exceptions while quoting from a Ninth Circuit opinion, but it did so without expressing approval of them. *See Preserve Endangered Areas of Cobb's History v. United States Corps of Engineers*, 87 F.3d 1242, 1247 n.1 (11th Cir. 1996). The only exception clearly adopted by the Eleventh Circuit applies "where there is initially a strong showing of bad faith or improper behavior by the agency." *Alabama-Tombigbee Rivers Coalition v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir.2007) (internal quotes omitted). The plaintiffs have not invoked this exception.

but further concludes — with the possible exception of certain trapping data and any documents as to which privilege has been improperly invoked — that the record should be complete upon FWS's promised supplementation.

As noted, the plaintiffs seek to submit evidence on a motion for preliminary injunction. The Court's discussion above addresses the plaintiffs' ability to present such evidence for purposes of the first element of such relief: a substantial likelihood of success on the merits. The plaintiffs argue that, even if they are unable to present evidence as to that element, they may present evidence in order to establish the second element: "a substantial threat of irreparable injury if the injunction were not granted." *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

The defendants concede that a plaintiff challenging an agency decision under the APA generally may introduce evidence to show irreparable harm, but they argue that the Court should disallow the plaintiffs' proffered evidence because it constitutes an improper attempt to use non-record evidence to challenge the merits of the BO through the guise of irreparable harm. (Doc. 49 at 6, 28-29; Doc. 52 at 10).

Evidence admissible for one purpose is to be admitted for that purpose even if it is inadmissible for another purpose. The proper cure in such a situation is not to exclude the evidence but to limit its consideration to the proper purpose. Thus, the plaintiffs will be allowed to present evidence for the limited purpose of establishing a substantial threat of irreparable harm should injunctive relief be denied (presumably, through showing adverse impacts on the ABM should the dune system be compromised by construction during the pendency of this lawsuit). However, in their case-in-chief the plaintiffs may not use such evidence to criticize the BO or underlying studies, reports, etc. in the administrative record. In the event the defendants attempt to rely on any of these documents (directly, or through the testimony of witnesses) as evidence that irreparable harm will not ensue absent an injunction, they will open the door for the plaintiffs on rebuttal to present all evidence at their disposal to show that the documents relied upon by the defendants are

flawed and thus not persuasive evidence concerning the absence of irreparable injury.

The governmental defendants request that the plaintiffs' presentation of evidence be limited to the three declarations they filed along with their motion for injunctive relief, whether presented at the hearing as declarations or as live testimony. (Doc. 49 at 24-25). Such a restriction would effectively doom the plaintiffs' ability to obtain injunctive relief, since the declarations are shot through with criticisms of the BO and underlying documents, which critiques may not be presented on the plaintiffs' case-in-chief. The governmental defendants' arguments for this extreme approach are plainly make-weight: that the plaintiffs have not affirmatively identified additional testimony the declarants could provide; that live testimony would hopelessly blur the distinction between admissible evidence of irreparable harm and inadmissible evidence of a flawed BO; and that counsel are too busy to depose the declarants. (*Id*.). The Court thus declines to restrict the plaintiffs' evidence to the existing declarations.

For their part, the private defendants move to strike the declarations of the plaintiffs' experts. (Doc. 53). While the declarations as they presently exist are presumably inadmissible on the plaintiffs' case-in-chief, they have yet to be offered into evidence. Accordingly, the motion to strike is **denied as premature**.[4]

Finally, the private defendants move for an order requiring the plaintiffs to present for deposition any witnesses whose testimony they intend to present live at the hearing. (Doc. 54). The parties are **ordered** to confer, on or before **May 11, 2007**, concerning the scheduling of depositions of any witnesses, including those identified by the defendants. (Doc. 49 at 25; Doc. 52 at 14-16). Should they be unable to reach agreement among themselves, the private defendants' motion and any future motion concerning pre-hearing

---

[4]It appears that, to the extent the plaintiffs do not present their witnesses live at the hearing, they intend to offer not the existing declarations but separate affidavits. (Doc. 46 at 1-2).

discovery will be addressed by Magistrate Judge Milling.[5]

For the reasons set forth above, the plaintiffs' motion for leave to present testimony and extra-record evidence is **granted** to the extent that: (1) the plaintiffs may present evidence of irreparable injury on their case-in-chief which does not criticize the BO or underlying documents; (2) they may present challenges to the BO and/or underlying documents in rebuttal, to the extent the defendants rely on them to show the absence of irreparable injury; (3) FWS is to amend the administrative record as set forth in this order; and (4) the plaintiffs may present evidence of standing.[6] In all other respects, the plaintiffs' motion is **denied**.

DONE and ORDERED this 8th day of May, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5]The parties are reminded of their representation to the Court that the hearing "is not anticipated to last more than one day." (Doc. 38). The Court has accommodated the parties' scheduling requests on the basis of this assurance, and the parties are therefore expected to take all reasonable steps to ensure that the hearing is concluded within the one day allotted. That obligation includes working together to streamline the presentations at the hearing. The Court will not permit the hearing to be used as a discovery device.

[6]The defendants do not oppose the plaintiffs' request to present such evidence. (Doc. 52 at 3 n.2).