# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SIERRA CLUB, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 07-0216-WS-M |
| | ) |
| DICK KEMPTHORNE, etc., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion to require completion of the administrative record. (Doc. 51). The parties have filed briefs in support of their respective positions, (Docs. 51, 71, 79), and the motion is ripe for resolution. After carefully considering the foregoing materials and conducting an in camera review of the disputed documents, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

Defendant United States Fish and Wildlife Service ("FWS") produced a list of documents in the administrative record totaling some 1,558 documents. (Doc. 51 at 8). Initially, FWS withheld over 200 of these documents on the grounds of privilege. (*Id*.). The parties, through their own efforts (and with some encouragement from the Court), commendably reduced the range of challenged, withheld documents to 40. (Doc. 71 at 4-5). All of these are withheld based on the "deliberative process" privilege, with a single document also withheld on the grounds of attorney-client privilege. (*Id*.). The plaintiffs encouraged the Court to review these documents in camera to determine if the invocation of privilege should be upheld, while FWS argued that no such review was necessary in light of the description of the documents provided by the declaration of its director.

## DISCUSSION

The deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated ...." *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 8 (2001) (internal quotes omitted).[1] "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions ... by protecting open and frank discussion among those who make them within the Government ...." *Id*. at 8-9 (internal quotes omitted).

"A document is 'deliberative' if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions." *Moye, O'Brien, O-Rourke, Hogan, & Pickert v. National Railroad Passenger Corp*., 376 F.3d 1270, 1278 (11th Cir. 2004). "Therefore, courts must focus on the effect of the material's release ... and conclude that predecisional materials are privileged to the extent that they reveal the mental processes of decisionmakers." *Id*. (internal quotes omitted). Moreover, "the Supreme Court has held that if, looking at the deliberative process as a whole, data can be deemed advice or opinion, it is necessarily deliberative. ... The only inquiry that should be made in deciding whether something should be denoted opinion, and hence deliberative, is: Does the information reflect the give-and-take of the consultive process?" *Florida House of Representatives v. United States Department of Commerce*, 961 F.2d 941, 948 (11th Cir. 1992).

---

[1]Most of the cases cited by the parties were decided under the Freedom of Information Act ("FOIA"). Because the parties claim no distinction between the privilege under FOIA and that applicable to civil litigation, the Court treats the two as identical. *See also Klamath Water Users*, 532 U.S. at 8 (the FOIA exception from which derives its deliberative process privilege is restricted to documents "'which would not be available by law to a party other than an agency in litigation with the agency'") (quoting 5 U.S.C. § 552(b)(5)).

The privilege is not without limits.  Importantly, "the Supreme Court has held that factual information generally must be disclosed ...."  *Moye*, 376 F.3d at 1278.  "Factual material may be withheld, however, when that material is so inextricably connected to the deliberative material that its disclosure would reveal the agency's decision making processes ... or when it is impossible to segregate in a meaningful way portions of the factual information from the deliberative information."  *Nadler v. United States Department of Justice*, 955 F.2d 1479, 1491 (11th Cir. 1992).

Even material that is "deliberative" as defined above is unprotected unless it is also "pre-decisional," that is, "prepared in order to assist an agency decisionmaker in arriving at his decision."  *Florida House*, 961 F.2d at 945 (internal quotes omitted).  Thus, "[m]aterial which predates a decision chronologically, but did not contribute to that decision, is not predecisional in any meaningful sense."  *Moye*, 376 F.3d at 1278.[2]

The burden generally rests with the party resisting disclosure to establish the applicability of the privilege.  *See, e.g., United States v. Singleton*, 260 F.3d 1295, 1301 (11th Cir. 2002) (marital privilege); *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991) (attorney-client privilege);  *Ely v. Federal Bureau of Investigation*, 781 F.2d 1487, 1489-90 (11th Cir. 1986) (exemptions under FOIA).  Thus, the burden is on the agency fighting civil discovery to establish the deliberative process privilege.  *E.g., Redland Soccer Club, Inc. v. Department of the Army*, 55 F.3d 827, 854 (3rd Cir. 1995).

The parties cite a single case addressing the deliberative process privilege in the context of a biological opinion ("BO").  In *Greenpeace v. National Marine Fisheries Service*, 198 F.R.D. 540 (W.D. Wash. 2000), the Court ruled that "a determination of jeopardy ... under the ESA [i]s not a process that implicate[s] [the agency's] policy-oriented judgment."  *Id*. at 544.  "Section 7 of the ESA does not require, nor permit,

---

[2]Assuming without deciding that the privilege must be invoked by the head of the agency, as the plaintiffs assert, (Doc. 51 at 7, 9), the director's declaration invokes the privilege and so satisfies any such requirement.  The plaintiffs do not argue otherwise.

discretionary policy-making.  A determination of jeopardy ... is limited to objective, fact-based scientific conclusions." *Id.*  Thus, the "analysis of jeopardy ... is essentially a factual rather than a legal or policy determination," and the deliberative process privilege does not apply.  *Id.* at 545.

Although the plaintiffs have barely mentioned *Greenpeace* and FWS has ignored it altogether, the Court notes that the opinion depends on the assumptions that the privilege extends only to policy determinations and that neither the jeopardy determination nor any antecedent decision represents policy.   Both premises are doubtful.

The Eleventh Circuit has on occasion intimated that the privilege applies only to a document that is "a direct part of the deliberative process in that it makes recommendations or expresses opinions *on legal or policy matters*." *Florida House*, 961 F.2d at 945 (emphasis added).  This, however, appears too crabbed a view, since the Supreme Court described the privilege as extending to documents "comprising part of a process by which governmental *decisions and policies* are formulated ...." *Klamath Water Users*, 532 U.S. at 8 (emphasis added).  Restricting the privilege to "policies" would render the "decisions" portion of *Klamath* superfluous.  *See also Environmental Protection Agency v. Mink*, 410 U.S. 73, 89 (1973) ("Virtually all of the courts that have thus far applied Exemption 5 [of FOIA] have recognized that it requires different treatment for materials reflecting *deliberative or policy-making* processes on the one hand, and purely factual, investigative matters on the other.") (emphasis added).

While a jeopardy determination may sound purely factual, it is a decision based on a welter of subsidiary decisions that cannot easily be so characterized, involving such things as what factors to consider, how to weigh them, how to address gaps in the evidence, and how to reconcile inconsistencies in the evidence.[3]  Based on similar

---

[3]Thus — to draw an example from this case — the actual population of ABM may be a factual determination, but the decision on how to proceed if trapping results and ABM characteristics prevent the accumulation of reliable population data is not.

considerations, the Eleventh Circuit ruled that the Census Bureau's final adjusted block level data constituted protected recommendations/opinions rather than unprotected facts, even though they were expressed as numbers, because "they derive from a complex set of judgments." *Florida House*, 961 F.2d at 949 (internal quotes omitted).

Given these concerns about *Greenpeace,* and the parties' failure to assist in assessing its import, the Court concludes that it does not does not provide the plaintiffs a short-cut through the traditional deliberative process privilege.

The plaintiffs complain that, gauged by the Vaughn index and the director's declaration, FWS is attempting to shield certain materials that are similar to documents it has already released to the plaintiffs. (Doc. 79 at 2-3). They do not invoke the doctrine of waiver, and it appears that any such effort would be futile. *See Florida House*, 961 F.2d at 947 (refusing to find a waiver as to undisclosed documents based on the disclosure of related documents); *see also Army Times Publishing Co. v. Department of the Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993) ("[I]t is true that the Air Force has not 'waived' its right to claim [a deliberative process] exemption from disclosure simply because it has released information similar to that requested ...."); *Blue Lake Forest Products, Inc. v. United States*, 75 Fed. Cl. 779, 791 n.21 (Ct. Cl. 2007) ("[R]elease of the document waives [the deliberative process] privilege only for the documents specifically released and not for related materials.") (internal quotes omitted).

The plaintiffs' motion targets disclosure of "disagreements about factual issues within the agency" and evidence that "questions or demonstrates weaknesses in the factual underpinnings of the decision." (Doc. 51 at 3, 5). But disagreement over factual issues and the strength or weakness of factual underpinnings is not itself "factual information" but instead "reflects the give-and-take of the consultive process," especially when the "facts" at issue "derive from a complex set of judgments." Such disagreement is the statement of opinion, and "[t]he fact/opinion distinction continues to be an efficient and workable standard for separating out what is, and what is not, deliberative." *Florida*

*House*, 961 F.2d at 949.

Applying these legal principles to the disputed documents, the Court concludes that the privilege is due to be upheld with respect to the large majority of them. With respect to the remainder, the Court concludes that these documents do not contain "deliberative" material and/or are not "pre-decisional" as defined above.[4] The following documents fall within this category:

- GH-BCW-E-06-2002-12-04 (discussion of an attached letter from counsel for the developers requesting that the developer's representatives be allowed to meet with Dr. Wilcox when he meets with FWS);
- GH-BCW-E-06-2005-05-06-A (Seattle Post-Intelligencer newspaper article concerning the development and ABM issues, a proposed rebuttal of points made in the article, and criticisms of the proposed rebuttal);
- GH-BCW-E-06-2006-08-21-A (proposed timeline for release of FEIS, NOA, and ROD);
- GH-BCW-E-06-2006-09-06 (e-mail string concerning interest by Senator Lott in the progress of the Service's development of an EIS).

The plaintiffs' final argument is that, even if the documents are protected by the deliberative process privilege, their need for the documents outweighs FWS's interest in protecting them from disclosure. The plaintiffs bear the burden of making this showing. *Redland Soccer Club*, 55 F.3d at 854. The parties agree that this balancing of interests is to be made based on a consideration of the following factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the Government's role in the

---

[4]The director's declaration asserts that each withheld document is pre-decisional "in that it was generated prior to the Service's issuance of the incidental take permits." (Hall Declaration, ¶ 6). That statement satisfies the temporal aspect of "pre-decisional," but it ignores the necessary relationship to the agency decision. Because FWS bears the burden of showing the protected status of the challenged documents, those that do not reflect they were prepared or used to assist in developing the agency decision are not rescued by the director's statement.

litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Federal Trade Commission v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (quoted in Doc. 51 at 12; Doc. 71 at 11).

      With respect to the first factor, the plaintiffs assert that any documents revealing disagreement with the jeopardy determination or any of the many decisions contributing to that determination are relevant to whether the determination was arbitrary and capricious, on the theory that the agency's expertise is due no deference if the agency ignored the analysis of its experts (on whom its expertise depends). (Doc. 51 at 13). Many of the withheld documents reflect internal discussions concerning various aspects of what would become the BO, EIS and CIA, but it is not clear that they reflect disagreements among persons with fixed opinions (as opposed to the normal exploration and refinement of ideas typical of groups), much less that they show FWS's rejection of its own experts' analyses.

      Assuming that some or all of the withheld documents are relevant on the grounds urged by the plaintiffs, their unexplained claim that there is no similar evidence already available rings hollow, particularly in light of their repeated insistence that most of the withheld documents are similar to those that FWS has produced. (Doc. 79 at 4-9).[5]

      FWS's role in this litigation as a defendant whose action is the focal point presumably weighs in the plaintiffs' favor. However, they invoke the fourth factor only with respect to those few documents discussing inputs on the PVA analysis, arguing weakly that the expenditure of public funds to develop the analysis, and the public interest in the ABM, stripped the agency of any reasonable expectation that such information would be protected from disclosure. (Doc. 51 at 13). This is too slender a

---

[5]As noted, FWS has produced approximately 1,518 documents and withheld 40. This is scarcely the "indiscriminate" invocation of privilege the plaintiffs condemn. (Doc. 51 at 12).

reed to support the conclusion that disclosure would not meaningfully hinder frank and independent discussion within the agency, particularly in light of the director's contrary declaration.

In short, application of the *Warner* factors to the plaintiffs' arguments demonstrates that they have not carried their burden of showing that their need for the withheld documents outweighs the agency's interest in withholding them.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion to require completion of the administrative record is **granted** with respect to the four documents listed above. FWS is **ordered** to produce these documents to the plaintiffs on or before **June 13, 2007**. In all other respects, the motion is **denied**.

DONE and ORDERED this 7th day of June, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE